CHANCERY.

### Rogers vs. Rogers.

Case 24.

#### ERROR TO FAYETTE CIRCUIT.

1. A father executed an obligation to two of his sons, binding himself to convey to them by will or otherwise, a portion of his estate, each, equal to any of his children then not provided for. The father, at the date of this obligation, had been several years married to a second wife, without issue or prospect of issue; afterwards a son was born to him. Held that this contract is to be understood as refering to his children then living, and not to the after born son.

2. A father gave his obligation to two sons, by which he promised, by will or otherwise, to convey to each of them an equal part of his estate to any of his children then unprovided for; the one assigned his interest in the obligation to the other, and died before the father, without issue. Held that the obligation ceased to become obligatory upon the death of such son.

3. By such obligation the surviving obligee can only claim to be made equal to that brother or sister living at the date of the contract, who was unprovided for, and was afterwards provided for by the father, to be paid out of the estate devised to the widow, and of son born after the contract.

July 24.

Judge CRENSHAW delivered the opinion of the court.

Case stated.

On the 7th day of February, 1816, Joseph Rogers executed an obligation to Coleman Rogers and Benjamin Rogers, by which he agreed and bound himself to convey, by will or otherwise, to said Coleman and Benjamin, his sons, an equal part to each, of his es-

tate, the amount of which to be equal in value to that which should be given to any of his children who were then unprovided for. And on the 18th day of January, 1822, Benjamin Rogers assigned his interest in said obligation to said Coleman Rogers, with certain contingent reservations. Benjamin Rogers died in the lifetime of his father, and previous to his death he, by the consent and approbation of his father, devised a certain portion of his father's estate to William Rogers, and others. Joseph Rogers died sometime in the year 1834, after having made his will, by which he devised and bequeathed the most of his estate to his widow, Susan Rogers, during her life, remainder to his son, Bernard. In his will he declared that he had given to Coleman Rogers an equal part of his estate, and had complied with the terms of said obligation, and Coleman was not to have another cent of his property.

Of the children of Joseph Rogers, living at the date of said obligation, and unprovided for, Richard appears to have received the largest portion. His whole portion, including what was devised to him, and what had been previously given him, as shown by the commissioner's report, amounted to nearly the sum of $8,000; and the portion which had been given to Coleman, as shown by the same report, amounted to something over $5,000; so that Richard received more than Coleman somewhere about the sum of $2,800. Bernard, who is considerably the largest devisee, was not born at the date of the obligation, and Joseph Rogers being quite old at that time, and having been married several years to his last wife without having issue, we presume it was not contemplated that his wife would ever bear to him a child.

Coleman Rogers instituted this suit, insisting that his father, Joseph Rogers, not only violated his obligation in not making him equal to the most favored child living at its date, and unprovided for, but, in not making him equal to Bernard, the after born child. He insists also, that, as his father's agreement em-

Rogers
vs.
Rogers.

braced Benjamin as well as himself, and as he was the assignee of Benjamin, he is entitled not only to a sum in his own right, which would make him equal to the most favored child, but also to an additional sum, as assignee of Benjamin, equal to the amount of the most favored child.

The obligation is a most singular one—it is an obligation *sui generis*, and of somewhat difficult and perplexing solution. It appears to have been executed in consequence of a claim set up by Coleman Rogers, in right of his wife and others, to certain negroes in the possession of Joseph Rogers, and by way of compromising that claim. By reason of this claim, the old man it seems, had threatened to disinherit Coleman and Benjamin, and, through the instrumentality of a third person, the obligation was executed to heal the difficulty in regard to said negroes, and to quiet the fears of Coleman of disinheritance. At the time of its execution, as we have already observed, Bernard was neither born, nor was it anticipated, as we think, that another child would be born to the old man. The children, therefore, then living, were the only children to be provided for in contemplation of the parties; and neither of the obligees desired or expected more than to be made equal to the most favored of the children then living, and unprovided for, and to secure that result was the obligation executed. It cannot be presumed that an old man, looking to the probability of future issue, would have agreed to make children, who, at his death, would be of an age and capacity to take care of themselves, equal to the future progeny who would necessarily be young and dependent, requiring much of their legacy to raise and educate them. We know that the term children, in reference to last wills and testaments, is ordinarily understood to embrace, not only the children living at the time they are made, but children living at the death of testators, and even those afterwards born. But the instrument to which we are giving a construction is not a will, but a con-

1. A father executed an obligation to two of his sons, binding himself to convey to them, by will or otherwise, a portion of his estate, each, equal to any of his children then not provided for. The father, at the date of this obligation, had been several years married to a second wife, without issue or prospect of issue; afterwards a son was born to him. Held, that this contract is to be understood as referring to his children then living, and not to the after-born son.

tract. Both contracts and wills, it is true, have to be construed so as to effectuate, as far as possible, the intention of the parties in the one case, and of testators in the other. But, whilst in ordinary cases we may expect testators, in their benevolent intentions, to have an eye to future probable offspring as well as that in being, and, whilst we generally find in wills sufficient evidences of such intention in regard to probable future issue, we would not only not expect to find evidences of such an intention in instruments executed under circumstances such as attended the execution of the one under consideration; but, when we come to weigh the circumstances under which it was executed, and view the language employed, we find ample reason for restraining the operation of the obligation to the children of the obligor in being at its date. As we understand the obligation upon its face, it has reference to children then in being—it does not look to, or contemplate children of the future. And when we come to consider the circumstances of its execution, the construction which arises from its own terms is strengthened and confirmed. None of the parties could have contemplated fruit from trees that had been barren and unfruitful for years; and, if they had, the old man, at least, cannot be supposed to have intended to extend an obligation, executed to purchase his peace, beyond the obvious meaning of its own terms.

As to any interest claimed by Coleman Rogers, as assignee of Benjamin, we think his suit must fail. The obligation imposed a duty upon the father to make provision for his sons, the obligees, as sons—it required him to do as good a part by them as he should do by any of his children then unprovided for. Benjamin died in the lifetime of his father without wife or child, and by his death, the obligation as to him, as we think, was extinguished. It was no longer the duty of the old man, by virtue of the obligation, or otherwise, to make provision for a child who was dead. The consideration of the obligation on the

Rogers
vs.
Rogers.

2. A father gave his obligation to two sons, by which he promised, by will or otherwise, to convey to each of them a part of his estate equal to any of his children then unprovided for; the one assigned his interest in the obligation to the other, and died before the father,

Rogers
vs.
Rogers.

without issue. Held, that the obligation ceased to become obligatory upon the death of such son.

part of the old man, it is true, was the quieting of the claim set up by his two sons to slaves which he also claimed; but the terms of the obligation only required of the old man, that he should treat these sons, in regard to his estate, as well as any child he had who was then unprovided for. This is the nature, character, and obligation of his contract. It placed these two sons upon a sure and equal footing with any of the other children, and this satisfied the fears which the boys had entertained of being disinherited. They, as his children, were to share in his estate equally with the most favored of those yet to be provided for. Benjamin died without wife or issue, and all claim upon his father's estate ceased and determined. In his lifetime he held the obligation subject to the contingency of dying without issue, and of the obligation becoming inoperative, and his assignee took his assignment subject to the same contingency.

3. By such obligation the surviving obligee can only claim to be made equal to that brother or sister living at the date of the contract, who was unprovided for, and was afterwards provided for by the father, to be paid out of the estate devised to the widow, and of son born after the contract.

From the foregoing views it results, that when Coleman Rogers shall be made equal to Richard, who is the most favored child among those living at the date of the obligation, who were not provided for, all just claim upon the estate will be satisfied. And, in order to ascertain the amount which will thus make him equal, nothing will have to be done but to subtract the amount ascertained by the commissioner, to have been received by Coleman, from the amount ascertained by him to have been received by Richard. The difference, with interest upon it from the time of the old man's death, will constitute the sum for which Coleman is entitled to a decree.

It remains to enquire out of what fund this decree will have to be paid, and against whom the decree must go; and we think it must be satisfied out of the estate devised to Bernard and his mother. The testator, by failing to give to Coleman an amount equal to what he gave to Richard, violated his obligation, and there remained, after what he gave to his children unprovided for at the date of the obligation, a large estate which he devised to his wife for life, re-

mainder to his son Bernard. And justice to his children, so unprovided for, requires that Coleman should be paid out of the estate devised to his wife and Bernard. Indeed, it would be hard to tell in what other way it could be satisfied, even in part, upon any ascertainable principle of equity. There would seem to be no propriety in going upon any of the children living and unprovided for at the date of the contract, except Richard, for they received less than he; and none in going upon Richard, for the moment any part of the estate given to him is taken for the purpose of making Coleman equal to him, Richard's estate is reduced, and Coleman becomes more than equal to him. And, if the portions given to these two sons are added together, and then the aggregate amount of the two sums is divided, Richard's portion is not only reduced, but Coleman does not get an amount equal to what the old man had given to Richard, the most favored of the children living at the date of the contract, and were unprovided for. As the old man's estate, which he devised to his wife and to Bernard, was a large and ample one, and as Bernard will have much more than that given to any one of his other children after paying Coleman out of this estate, it appears to us that it is this estate which ought to satisfy the claim of Coleman Rogers. The contract, as we have remarked, is a singular one, and we derive no aid from the analogies of the law, and must determine the case upon what seems to us the equity of the case.

It is suggested that the administratrix of Bernard Rogers married during the pendency of the suit in the court below, if so, her husband should be made a party before decree. Besides him, it does not appear to us that any other parties are necessary who are not before the court, as all who are to be affected by the decree appear to be before the court.

It seems that some arrangement was made between Bernard Rogers and his mother, by which he has become possessed of a portion of the property

devised to him in remainder; and it appears also, that his mother, under an arrangement between herself, Henry Rogers, and others, had delivered a part of the property to them; but these arrangements are matters between themselves with which the court, in its decree, need not be concerned. After the amount to which Coleman Rogers is entitled shall be ascertained, the decree should be against the administratrix of Joseph Rogers as such, and against her as devisee and legatee, and against the administratrix and heirs of Bernard Rogers.

Wherefore, the decree is reversed, and cause remanded with directions that a decree be rendered as indicated.

SHY and BECK for plaintiff; ROBINSON, JOHNSON, and CARPENTER for defendant.